**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**EASTERN DIVISION**

**GRAIN DEALERS MUTUAL**
**INSURANCE COMPANY**                                                    **PLAINTIFF**

**v.**                                                    **CIVIL ACTION NO. 2:16-CV-39-KS-MTP**

**TAMMY COOLEY, et al.**                                                    **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on the Motion for Summary Judgment [63] filed by Plaintiff Grain Dealers Mutual Insurance Company, and the Motion for Summary Judgment [65] and Objection to and Appeal of Magistrate Judge's Order ("Objection") [68] filed by Defendants Tammy Cooley, Walter Cooley, and Sunrise Trading Post, LLC.   After considering the submissions of the parties, the record, and the applicable law, the Court finds that the Motion for Summary Judgment [63] is well taken and should be granted.   The Court further finds that the Motion for Summary Judgment [65] and the Objection [68] are not well taken and should be denied.

## I.  BACKGROUND

This is an action filed by Plaintiff Grain Dealers Mutual Insurance Company ("Plaintiff"), seeking a declaratory judgment that it owes no coverage under insurance policies issued to Defendants Tammy Cooley, Walter Cooley, and Sunrise Trading Post, LLC (collectively "Defendants").  Defendants have filed counterclaims seeking a declaratory judgment that Plaintiff is liable for coverage under the insurance policies and that Plaintiff breached those policies by denying coverage.

Defendants owned and operated a gas station in Petal, Mississippi from 2002 until 2008. Plaintiff issued a Businessowners Policy of Insurance, Policy Number SBP 516 456 (the "2002 Policy") in 2002. Defendants renewed this policy in 2003 and assigned policy number SBP 516 45601 (the "2003 Policy").[1] Both Policies included an absolute pollution exclusion (the "Pollution Exclusions"), which disclaimed coverage for property damage from "the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants.'" (2002 Policy [63-3][65-1] at p. 0013; 2003 Policy [63-4][65-2] at p. 0110.) Defendants sold the gas station to Robert Allen Morgan, Melissa Morgan, and Pine Belt Oil Company ("Pine Belt")[2] in May 2008.

In September 2008, the Mississippi Department of Environmental Quality ("MDEQ") began investigating a possible gasoline leak originating from the gas station. (*See* MDEQ Order [63-1][65-6] at pp. 2-3.) Defendants wrote Plaintiff to notify it of the gasoline leak and the complaint filed with the MDEQ. (*See* November 10 Letter [65-7].) Plaintiff replied to this letter ten days later, stating that there would be no coverage of any ordered remediation pursuant to the Pollution Exclusions, but that Plaintiff would defend them under the policy in the MDEQ action. (*See* November 20 Letter [63-5][65-8].) Plaintiff hired Silas McCharen ("McCharen") to represent Defendants in the MDEQ action. On March 5, 2009, the MDEQ issued its order, finding that Defendants and Pine Belt were liable for the containment and removal of the gasoline from the contaminated site and surrounding properties. (*See* MDEQ Order [63-1][65-6] at pp. 4-5.) The order provided that if Defendants or Pine Belt were "aggrieved by this Order," they could "request

[1] The 2002 Policy and 2003 Policy are herein referred collectively as the "Policies."
[2] Pine Belt is also a defendant in this case, but has asserted no counterclaim nor has it joined in Defendants' Motion for Summary Judgment [65].

a hearing before the Commission by filing a sworn petition with the Commission within thirty (30) days." (*Id*. at p. 5.)  No hearing was requested.

On March 31, 2016, Plaintiff filed the current action in this Court, seeking declaratory judgment that there was no coverage under the Policies pursuant to the Pollution Exclusions.  On April 15, 2016, Pine Belt filed suit against Defendants in the Circuit Court of Forrest County, Mississippi, seeking indemnity for costs associated with the MDEQ Order (the "Pine Belt Lawsuit").  (*See* Pine Belt Complaint [11].)  Plaintiff denied coverage to defend or indemnify this suit, citing the Pollution Exclusions.  (*See* July 25 Letter [63-6][65-14].)  Plaintiff subsequently filed an Amended Complaint [16] in this action adding Pine Belt as a defendant.

On January 26, 2017, Defendants filed a Motion for Sanctions [58] against Plaintiff, claiming that Plaintiff's counsel frustrated the deposition of Plaintiff's corporate representative. In ruling on this motion, United States Magistrate Judge Michael T. Parker (the "Magistrate") remarked on the untimeliness of the motion, which was filed sixteen days after the discovery deadline; the untimeliness of the deposition, which was taken on the last day of discovery; and the general untimeliness of discovery by Defendants, who waited more than four months after the Case Management Order [10] was entered to even serve discovery requests on Plaintiff.  (*See* Order [62] at pp.2-3.)  Nevertheless, disregarding these timing issues, the Magistrate evaluated the merits of the Motion for Sanctions [58] and denied it, finding that though "there were a number of unnecessary objections, Plaintiff's counsel did not frustrate the examination of the deponent to such an extent that remedial actions are necessary or appropriate" and that "[m]any of the 'form' objections were arguably meritorious, though counsel plainly overused the objection."  (*Id.* at p. 4.)  Defendants filed their Objection [68] to this Order [62] on February 16, 2017, arguing that their lack of timeliness was justified and that the Magistrate's Order [62] "seems to convey that an

3

attorney has more latitude to engage in improper conduct during a deposition with impunity the later in the discovery period the deposition is taken." (Objection [68] at p. 1.)

## II. MOTIONS FOR SUMMARY JUDGMENT [63][65]

### A. Standard of Review

Federal Rule of Civil Procedure 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Where the burden of production at trial ultimately rests on the nonmovant, the movant must merely demonstrate an absence of evidentiary support in the record for the nonmovant's case." *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 812 (5th Cir. 2010) (citation and internal quotation marks omitted). The nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Id.* "An issue is material if its resolution could affect the outcome of the action." *Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010) (quoting *Daniels v. City of Arlington, Tex.*, 246 F.3d 500, 502 (5th Cir. 2001)). "An issue is 'genuine' if the evidence is sufficient for a reasonable [fact-finder] to return a verdict for the nonmoving party." *Cuadra*, 626 F.3d at 812 (citation omitted).

The Court is not permitted to make credibility determinations or weigh the evidence. *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009) (citing *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007)). When deciding whether a genuine fact issue exists, "the court must view the facts and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Sierra Club*, 627 F.3d at 138. However, "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial."

*Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002) (citation omitted).  Summary judgment is mandatory "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Brown v. Offshore Specialty Fabricators, Inc.*, 663 F.3d 759, 766 (5th Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)).

Though Defendants' counterclaims are not exact mirrors of Plaintiff's declaratory judgment action, the issues are identical.  Plaintiff asks the Court for a declaratory judgment stating that it is not liable for coverage under the Policies for damages resulting from the gasoline leak pursuant to the Policies' pollution exclusions.  Defendants assert that Plaintiff is estopped from denying coverage because of their prior actions, that the issue is not yet ripe, that coverage is not excluded, and that Plaintiff is liable for extra-contractual damages because of their bad faith denial of coverage.  Because these issues and arguments are present in both motions for summary judgment, they will be addressed simultaneously.

**B.      Estoppel**

Defendants argue that because Plaintiff did not reserve its rights to contest coverage before undertaking the defense of the underlying suits, it is estopped from denying coverage exists.  It is clear from the record, however, that Plaintiff did not reserve the right to contest coverage because it denied coverage existed from the very beginning of the underlying suits.  (*See* November 20 Letter [63-5][65-8].)  Attaching the "Total Pollution Exclusion," Plaintiff explained in a letter dated November 20, 2008, ten days after the letter from Defendants initially notifying it of the MDEQ suit, that coverage of any actual clean up would not be covered under the Policies.  (*See id.*)  It was Plaintiff's understanding that it had the duty to defend even though it had already disclaimed a duty to indemnify, and this was relayed to Defendants in the November 20 Letter.

(*See id.*; *see also* Brennan Depo. [65-9] at 57:4-25.)  Therefore, Defendants should have been well aware that Plaintiff was denying coverage of the property damage caused by the gasoline leak and any remediation ordered by MDEQ, despite the fact that Plaintiff was defending the suit.

Of course, such a defense may still endanger the insureds' interests the same way an insurer who has reserved its rights to contest coverage could.  *See Moeller v. Am. Guar. & Liab. Ins. Co.*, 707 So.2d 1062, 1069 (1996) (quoting *CHI of Alaska, Inc. v. Emp'rs Reinsurance Corp.*, 844 P.2d 1113, 1116 (Alaska 1993)) (enumerating the ways an insurer defending under a reservation of rights may create a conflict of interests).  Therefore, Plaintiff may have had a duty under *Moeller* to ensure that Defendants were aware of any potential conflicts of interest and provide them with their own independent counsel.  *Id.*; *see also Twin City Fire Ins. Co. v. City of Madison, Miss.*, 309 F.3d 901, 907 (5th Cir. 2002).  However, even if Plaintiff had this duty and even if they failed to fulfill it, in order for Plaintiff to be estopped from denying coverage, Defendants must show that Plaintiff's actions in defending the underlying suits while disclaiming indemnification resulted in prejudice to them.  *See Twin City*, 309 F.3d at 907-08 (citing *S. Farm Bureau Cas. Inc. Co. v. Logan*, 119 So.2d 268, 272 (1960)).

As Defendants bear the burden of establishing estoppel at trial, to defeat summary judgment, they must adduce some evidence establishing prejudice.  *See Cuadra*, 626 F.3d at 812.  Defendants cite the American Law Reports for their position that prejudice can be presumed by their loss of the right to maintain complete control of the defense.  *See* 38 A.L.R. 1148.  The Court, however, does not agree that such a presumption is warranted in this case.  Plaintiff never withdrew from the defense of the MDEQ suit, but instead litigated it to completion.  There is nothing in the record demonstrating that McCharen's defense strategy in any way prejudiced Defendants, particularly when it was the position of Plaintiff that there was no potential for indemnification,

which had already been denied.[3]  The only source of potential prejudice is McCharen's failure to request a hearing after the MDEQ Order was issued.  However, Defendants have put forward no evidence to show that there was any probability that a hearing may have changed the outcome of the action.

Therefore, because Defendants have not shown that they were prejudiced in any way by Plaintiff's defense of the underlying suits, the Court does not find that Plaintiff is estopped from denying coverage.

### C.    Ripeness

Defendants argue that the issue of coverage is not ripe for adjudication because the Pine Belt Lawsuit puts the ultimate liability for the gasoline leak in question.  At the same time, though, Defendants argue that Plaintiff has a duty to defend in the Pine Belt Lawsuit.  The duty to defend is broader than the duty to indemnify because it encompasses all potential liability under the policy. *Greenwich Ins. Co. v. Capsco Indus., Inc.*, No. 1:14-CV-297-LG-JCG, 2014 WL 5025856, at *2 (S.D. Miss. Oct. 8, 2014) (citing *Titan Indem. Co. v. Pope*, 876 So.2d 1096, 1101 (Miss. Ct. App. 2004)).  Plaintiff contends that the Pollution Exclusions make it not liable to defend or indemnify. Therefore, because the determination of the duty to defend involves the same questions of law as the duty to indemnify, the Court can rule on the duty to indemnify even though some questions remain as to the ultimate liability of Plaintiffs.  *See Greenwich*, 2014 WL 5025856, at *2.

### D.    Pollution Exclusions

Defendants contend that the Pollution Exclusions in the Policies are ambiguous and should therefore be construed against Plaintiff as the insurer.  They argue that because gasoline is not enumerated in the definition of "pollutant" and because a layman would consider gasoline a fuel

---

[3] The Court does not know and need not decide whether Plaintiff actually had the duty to defend at all after denying any potential coverage of the underlying claims.

and not a pollutant, then the exclusions are ambiguous as to whether gasoline falls under them. There appears to be no dispute, though, that if gasoline is a "pollutant" as referenced in the Pollution Exclusions, then Plaintiff has no duty to defend or indemnify in the underlying suits.

Both parties correctly point out that no Mississippi court has addressed whether gasoline can be a "pollutant" under a total pollution exclusion in an insurance policy.  In addressing this potential ambiguity, then, the Court looks first to the language of the Pollution Exclusions.  The 2002 Policy defined "pollutant" as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste."  (Policies [63-3][65-1] at p. 0014.)  The 2003 Renewal Policy replaces the language of the original pollution exclusion with the "Total Pollution Exclusion" language, and does not seem to define "pollutants."[4]

Defendants first argue that gasoline is not enumerated in the definition of "pollutants" in the 2002 Policy and should therefore not be considered as one under either of the Policies.  This argument fails for a number of reasons.  First, it would be impractical to require an insurer to list thousands of potential substances that would fall under the general term "pollutant."  *See Federated Mut. Ins. Co. v. Abston Petroleum, Inc.*, 967 So.2d 705, 712-13 (Ala. 2007) (citing *Harnischfeger Corp. v. Harbor Ins. Co.*, 927 F.2d 974, 976 (7th Cir. 1991)).  Second, it is a long-standing principle of interpretation that "the term 'including' is not one of all-embracing definition, but connotes simply an illustrative application of the general principle."  *Fed. Land Bank of St. Paul v. Bismarck Lumber Co.*, 314 U.S. 95, 100, 62 S. Ct. 1, 86 L.Ed. 65 (1941) (citing *Phelps Dodge Corp. v. Nat'l Labor Relations Bd.*, 313 U.S. 177, 189, 61 S. Ct. 845, 850, 85 L.Ed. 1271 (1941)).  Though this principle is typically applied in statutory interpretation, the Court finds that it has an appropriate analogous application here.  Third, and perhaps more importantly, the list of

---

[4] Defendants do not argue that this absence of a definition makes the exclusion ambiguous as to all pollutants.

"pollutants" in the given definition is not a list of specific substances. Rather, as Plaintiff points out, it is a list of *forms* a pollutant may take. For instance, "chemicals" encompasses a wide range of potential pollutants, none of which are specifically named. In fact, because "gasoline" is defined by the American Heritage Dictionary as "a volatile mixture of flammable liquid hydrocarbons derived chiefly from crude petroleum and used principally as a fuel for internal-combustion engines,"[5] it is a chemical compound that could fall under the category of "chemicals" in the pollutant definition. For these reasons, the Court does not find that the fact that gasoline is not enumerated under the definition of "pollutants" to create an ambiguity in the contract as to whether gasoline is a pollutant to which the Pollution Exclusions apply.

The Court also does not find persuasive Defendants' argument that a "layman" would not consider gasoline to be a pollutant because it is ordinarily used as fuel. As the Supreme Court of Alabama held in a similar case, "gasoline, although not a pollutant when properly used for the purposes for which it is intended, is clearly a pollutant when it leaks into the soil from underground lines or tanks . . . ." *Abston*, 967 So.2d at 713. To cite a substance's typical use to argue that it cannot be considered a pollutant in certain circumstances defies logic. "[I]t is a rare substance indeed that is *always* a pollutant; the most noxious of materials have their appropriate and non-polluting uses." *U.S. Fire Ins. Co. v. Ace Baking Co.*, 164 Wis.2d 499, 505 (Wis. Ct. App. 1991).

The only case Defendants cite that stands for their contention that gasoline is not a pollutant under the Pollution Exclusions is *American States Insurance Co. v. Kiger*, an Indiana Supreme Court case which held that, because the exclusion would exclude a large portion of the gas station's business if it included gasoline as a pollutant, the language must explicitly specify that gasoline is a pollutant. 662 N.E.2d 945, 949 (Ind. 1996). This is the minority view, however, as a majority

---

[5] *American Heritage Dictionary of the English Language* (5th ed. 2017).

9

of the courts who have addressed this issue have held that gasoline is a pollutant under absolute pollution exclusions.  *See, e.g., Owners Ins. Co. v. Farmer*, 173 F.Supp.2d 1330, 1333 (N.D. Ga. 2001) (quoting *Truitt Oil & Gas Co. v. Ranger Ins. Co.*, 498 S.E.2d 572, 574 (Ga. Ct. App. 1998) ("Gasoline which has leaked from its storage container and has contaminated the surrounding environment constitutes a pollutant within the meaning of the policy."); *Abston*, 967 So.2d at 713 (holding that gasoline was a pollutant under the absolute pollution exclusion in the gas station's policy); *Harrison v. R.R. Morrison & Son, Inc.*, 862 So.2d 1065, 1072 (La. Ct. App. 2003) (applying Mississippi contract law to find that "gasoline is a liquid contaminant within the plain meaning of pollutant in the insurance policy"); *Wagner v. Erie Ins. Co.*, 801 A.2d 1226, 1232 (Pa. Super. Ct. 2002) (concluding that the fact that the owner was the owner of a gas station irrelevant and finding that gasoline was "indisputably" a pollutant); *Millers Mut. Ins. Ass'n of Ill. V. Graham Oil Co.*, 668 N.E.2d 223, 228 (Ill. Ct. App. 1996) (holding that gasoline was a pollutant despite the policy being issued to a gas station); *Crescent Oil Co., Inc. v. Federated Mut. Ins. Co.*, 888 P.2d 896, 875 (Kan. Ct. App. 1995) (excluding coverage under a general commercial policy issued to a gas station pursuant to an absolute pollution exclusion for a gasoline leak).

The Court finds the majority view to be more persuasive, particularly when other courts applying Mississippi law have reached a similar conclusion.  *See Harrison*, 862 So.2d at 1072. The Court therefore finds that gasoline is a pollutant under the Pollution Exclusions.  As Defendants appear to concede that coverage does not exist if gasoline is found to be a pollutant,[6] the Court further finds that Plaintiff does not have the duty to defend or indemnify in the underlying suits.

---

[6] Even without such a concession, the clear language of the Pollution Exclusions would exclude coverage in this case.

E.      **Extra-Contractual Damages**

Defendants' basis for extra-contractual damages derives from their claims that Plaintiff wrongly denied them coverage.  Because the Court finds that no coverage exists under the Policies, no extra-contractual damages are warranted.

Therefore, the Court will **grant** Plaintiff's Motion for Summary Judgment [63] and **deny** Defendants' Motion for Summary Judgment [65].  Plaintiff is not liable to defend or indemnify Defendants in the underlying suits, and Defendants' counterclaims will be **dismissed with prejudice**.

## III.  MOTION FOR REVIEW [68]

Under Federal Rule of Civil Procedure 72(a), this Court must "modify or set aside any part of [a Magistrate's] order that is clearly erroneous or is contrary to law."  *See also* 28 U.S.C. § 636(b)(1)(A).  The Magistrate's order is reviewed in light of the facts which were actually known to the Magistrate at the time the decision was made.  *See Tafas v. Dudas*, 530 F.Supp.2d 786, 796 n.3 (E.D. Va. 2008).

In denying Defendants' Motion for Sanctions [58], the Magistrate, though expressing concerns over the timing of the motion, of the subject deposition, and of discovery in general, reached the merits of the motion and found that it should be denied because "Plaintiff's counsel did not frustrate the examination of the deponent to such an extent that remedial actions are necessary or appropriate."  (Order [62] at p. 4.)  The Order [62] in no way "convey[ed] that an attorney has more latitude to engage in improper conduct during a deposition the later in the discovery period the deposition is taken."  (*See* Objection [68] at p. 1.)  Rather, the Magistrate used the Order [62] to rightly chastise Defendants for their lack of timeliness before he moved on to evaluate the Motion for Sanctions [58] and find that it lacked merit.  In reviewing the record

and the applicable law, the Court finds that the Magistrate's rulings were not clearly erroneous nor were they contrary to law.  *See* Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A).  As such, the Objection [68] will be **denied**.

## IV.  CONCLUSION

IT IS THEREFORE ORDERED AND ADJUDGED that Plaintiff's Motion for Summary Judgment [63] is **granted**.  Plaintiff is not liable under the Policies to defend or indemnify in the underlying suits, and Defendants' counterclaims are **dismissed with prejudice**.

IT IS FURTHER ORDERED AND ADJUDGED that Defendants' Motion for Summary Judgment [65] is **denied**.

IT IS FURTHER ORDERED AND ADJUDGED that Defendants' Objection [68] is **denied**.

SO ORDERED AND ADJUDGED, on this, the _30th____ day of March, 2017.

____s/Keith Starrett_____ _____
KEITH STARRETT
UNITED STATES DISTRICT JUDGE